FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2013 MAR 28 P 2: 10

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Christine Hinzman )<br>9007 Mulvaney Ct. )<br>Springfield, VA 22152 )<br> )<br>Plaintiff, )<br> )<br>v. ) Civil Action No. 1:13cv395<br> ) LMB/TRJ<br>Scarsbrough Management Corp. )<br>d/b/a Burger King Corporation, )<br>2236 Camino Ramon )<br>San Ramon, CA 94583 )<br> )<br>Serve: William Scarsbrough )<br> 2236 Camino Ramon )<br> San Ramon, CA 94583 )<br> Registered Agent )<br>and )<br> )<br>Burger King Corporation )<br>5505 Blue Lagoon Dr. )<br>Miami, FL 33126 )<br> )<br>Serve: CT Corporation System )<br> 4701 Cox Road, Suite 301 )<br> Glen Allen, VA 23060-6802 )<br> Registered Agent )<br> )<br>Defendants. ) | |

## COMPLAINT

**COMES NOW** THE PLAINTIFF, Christine Hinzman, by counsel, Lloyd F. Sammons, and moves this Court for an entry of judgment in her favor, and against the Defendants, Burger King Corporation and Scarsbrough

Management Corporation, dba, Burger King Corporation, under the franchise owner/management of Ben Jarratt. In support plaintiff alleges as follows:

## I. NATURE OF ACTION

1. This is an action arising out of the conduct of the Defendants, Burger King Corporation and Scarsbrough Management Corporation, doing business at 10885 Lee Highway, Fairfax, Virginia.

## II. PARTIES

2. Plaintiff, Christine Hinzman, is a resident of the County of Fairfax in the Commonwealth of Virginia.
3. Defendant Burger King Corporation is a global, for-profit business with chain of hamburger fast-food restaurants headquartered in unincorporated Miami-Dade County, Florida, United States with an annual profit over two billion dollars and upon best information and belief is incorporated in the State of Florida.
4. Defendant Scarsbrough Management Corporation is located at 2236 Camino Ramon, San Ramon, CA 94583, and is listed as the insured management company of the Burger King franchise located in Fairfax, Virginia and upon best information and belief is incorporated in the State of California.

## III. JURISDICTION AND VENUE

5. The amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs, specified by 28 U.S.C. §1332.
6. The cause of action arose in Fairfax County, in the Commonwealth of Virginia.
7. This Court has jurisdiction and venue over Mr. Hinzman's cause of action based on diversity of citizenship.

8. Burger King Corporation is a company organized and incorporated in the State of Florida.

9. Scarsbrough Management Corporation is incorporated in the State of California, with its registered agent listed as William Scarsbrough and at all times relevant to this cause of action was doing business in the Commonwealth of Virginia, as the franchisor of the Burger King.

## IV. FACTS.

10. Ms. Hinzman was employed on May 19, 2012, as a defense contractor on her way to work.

11. On that date, Ms. Hinzman purchased a strawberry, smoothie drink (smoothie) as a customer of Burger King in Fairfax, Virginia, which is a franchise of Scarsbrough Management Corporation and Burger King Corporation.

12. Ms. Hinzman ordered the smoothie at the drive-up window of the Burger King.

13. Ms. Hinzman remained in her car when she ordered and had no ability to watch the preparation of the smoothie.

14. To the best information and belief, an employee of the Defendants blended ingredients in a commercial grade mixer, believed to be a Vitamix brand mixer, to make the smoothie.

15. To the best information and belief, the mixing process for the smoothie required preparation actions by an employee of Burger King.

16. The preparation of food products at Burger King, including smoothies, required training to safely operate the mixing machine.

17. At all times relevant to the preparation of the smoothie, the preparer of the drink was an employee of Burger King.

18. After Ms. Hinzman placed her order, she drove her car to the drive-thru window, paid for the drink, and took the container cup holding the contents of the smoothie from the window-cashier at the drive-thru window.

19. Ms. Hinzman placed the container into a cup holder in her car and drove off.
20. Ms. Hinzman consumed portions of the smoothie through a straw as she was driving to work.
21. Ms. Hinzman arrived at work, which was about a ten-minute drive from the Burger King.
22. Ms. Hinzman worked for approximately 30 minutes.
23. Then Ms. Hinzman began to choke and experience pain in her stomach and throat.
24. Ms. Hinzman had had no intervening intake of any food or drink from the time of her smoothie purchase to the time she began choking.
25. At this point, Ms. Hinzman began to choke more intensely, but did not cough up anything.
26. Ms. Hinzman continued to work and then began to choke again, this time she coughed up a foreign object, which she identified as a plastic shard approximately one inch.
27. The shard had been projected onto the floor and could not be located again on the floor of the office.
28. Ms. Hinzman inspected the container containing the smoothie and looked through the opaque bottom.
29. Ms. Hinzman saw shapes at the bottom of the container inconsistent with the normal mixture of a smoothie.

30. The foreign objects, later determined to be plastic shards, were by that time visible on the opaque bottom of the container



31. Ms. Hinzman called the Defendants' Burger King and told an employee of Burger King what had happened to her.
32. The employee of the Defendants told Ms. Hinzman that they (Burger King) were aware that a plastic top had been mixed into the smoothie sold to Ms. Hinzman.
33. The Defendants' employee asked Ms. Hinzman to bring back the smoothie.
34. Ms. Hinzman took the smoothie back to Burger King and showed the contents at the bottom of the container to the manager on duty.
35. The manager requested that Ms. Hinzman fill out an incident report, which she did.
36. The manager expressed her regrets to Ms. Hinzman and told her that the machine had "malfunctioned" and that they (Burger King) were aware of what happened.
37. Ms. Hinzman was told by the manager that there was going to be an investigation about the matter and the manager offered to replace the smoothie.
38. The manager took the container from Ms. Hinzman.

39. It is unknown what happened to the smoothie container; however, the Defendant did regain control of the smoothie and the container.
40. Ms. Hinzman returned to work but felt unwell.
41. Ms. Hinzman's condition, both physically and emotionally, began to deteriorate.
42. From the date of the ingestion of the plastic shards to May 24, 2012, Ms. Hinzman experienced increasing pain and discomfort, which finally intensified to the point that Ms. Hinzman realized she was in a critical condition warranting medical attention.
43. On May 24, 2012, Ms. Hinzman went to the Emergency Room at INOVA Hospital at Mount Vernon where she was treated for abdominal distress.
44. On that date, the husband of Ms. Hinzman called Ben Jarratt, who was responsible for the Fairfax Burger King.
45. Mr. Jarratt stated that he was aware of the incident with the smoothie and admitted that Burger King was responsible.
46. On May 24th, 2012, Ms. Hinzman was given a follow-up appointment with her Primary Care Physician.
47. Over the course of the summer, Ms. Hinzman's medical and emotional condition further deteriorated.
48. Prior to May 19, 2012, Ms. Hinzman's health had been stable.
49. After the ingestion of the plastic shards in the smoothie, Ms. Hinzman continued to work until June 17th when it became impossible for her to continue working due to the persistent pain she was experiencing.
50. Since that date to the present, Ms. Hinzman has been unable to return to work due to the complications of her injuries.
51. Between the excruciating pain and the attendant medical conditions, Ms. Hinzman has been treated numerous times and has undergone several, painful, diagnostic procedures in order to resolve her medical situation.

## V. COUNT ONE
## PRODUCT LIABILITY

52. The foregoing paragraphs are incorporated by reference as if re-alleged herein.
53. Defendants, at all times relevant to this cause of action, were in the business of selling food products to the public.
54. Defendants impliedly warranted that their food products were fit for human consumption.
55. The smoothie purchased by the plaintiff in the ordinary course of business was a food product that had been prepared by the defendants and was not fit for human consumption because there were shards of plastic in the contents of the smoothie.

## VI. COUNT TWO
## NEGLIGENCE

56. The foregoing paragraphs are incorporated by reference as if re-alleged herein.
57. The Defendants, based on the actions of its employees, were negligent.
58. The Defendants' employee failed to properly prepare the smoothie sold to the plaintiff.
59. The Defendants' employee, through his or her actions or omissions, failed to attend to the preparation of the smoothie, food product, which was a part of his or her duty as an employee of the defendant.
60. This failure permitted the smoothie sold to the plaintiff to contain dangerous particles of plastic, which the plaintiff consumed.
61. Plaintiff unknowingly consumed the plastic in her smoothie, which physically and emotionally injured the plaintiff.
62. The consumption of the smoothie by the plaintiff was the proximate cause of her injuries and her inability to return to work.

## VII. COUNT THREE
## NEGLIGENCE

63. The foregoing paragraphs are incorporated by reference as if re-alleged herein.

64. The defendants are further negligent in its failure to adequately train its employees.

65. The defendants failed to train its employee, who prepared the smoothie for the plaintiff, on the proper use of a machine used to prepare one of its food products, namely a mixing machine.

66. The defendants were under a duty to insure that the machines used to prepare food would be used in a manner consistent with safe use standards.

67. The defendants' employee should have been in a position, if trained properly, to observe a piece of the mixer lid (the top) falling into the mixer and ground up into the smoothie consumed by the plaintiff.

68. The defendants' employee either was grossly negligent, recklessly indifferent or consciously disregarded the requirement to prepare food safely.

69. In either of the above descriptions, the negligence, which occurred by the failure of defendants to properly train its employees in the use of food preparation equipment is a proximate cause, in whole or in part, of the injuries sustained by the plaintiff.

## VIII COUNT FOUR
## NEGLIGENCE

70. The foregoing paragraphs are incorporated by reference as if re-alleged herein.

71. Defendants failed to properly supervise its employees.

72. Defendants had a duty to properly supervise employees under its control.

73. Defendants did not properly supervise its employee and did not insure that the employee properly prepared the smoothie sold to the plaintiff.
74. The injuries incurred by the plaintiff were the proximate cause of the failure of the defendant to supervise its employee, in whole or in part.

## IX COUNT FIVE
## NEGLIGENCE

75. The foregoing paragraphs are incorporated by reference as if re-alleged herein.
76. Defendants failed to perform quality control over the food products it prepared for sale.
77. Defendants did not perform any quality control checks on the smoothie it sold to the plaintiff.
78. Defendants had a duty to insure that the quality control of food preparation safeguarded the quality of food, including smoothies, sold to the public.
79. Defendants had no quality control process in place to inspect food products it sold to consumers.
80. This failure by defendants was a proximate cause, in whole or in part, of the injuries inflicted on the plaintiff when she drank shards of plastic ground into the smoothie she purchased.

## X. DAMAGES

81. The foregoing paragraphs are incorporated by reference as if re-alleged herein.
82. As a direct and proximate cause of the allegations set forth in Counts I through V above, the plaintiff suffered severe and possible permanent injuries, and has suffered and will continue to suffer great pain of the body and mind: and the plaintiff has been otherwise injured.
83. As a direct and proximate result of the allegations set forth in Counts I through V above, the plaintiff has incurred and will incur in the future expenses, medical, hospital and doctors' bills in an effort to be cured of her

injuries and relieved of her pain and suffering, and the plaintiff has been and will be prevented from engaging in her regular and gainful occupation, and has suffered and will suffer loss of income and earnings, and has suffered loss of earning capacity, and the plaintiff has suffered other damages, including pain and suffering.

### XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, CHRISTINE HINZMAN, prays that this Court enter judgment in her favor against the Defendants, BURGER KING CORPORATION and SCARSBROUGH MANAGEMENT CORPORATION, jointly and severally, in the amount of one million dollars ($1,000,000.00) in compensatory damages and five hundred thousand dollars ($500,000.00) in punitive damages for Defendants' failure to implement safety standards and train its employees to safely operate food preparation machines.

### XII. JURY TRIAL DEMAND

The Plaintiff, Christine Hinzman demands a jury trial on all questions of fact raised in her complaint.

Respectfully submitted,

/s/ Lloyd F. Sammons
Lloyd F. Sammons, VSB #25008
Attorney for Plaintiff
510 King Street
Suite 400
Alexandria, Virginia 22314
(571) 226-7584
Lloyd@lloydsammons.com